## No. 4270

## Second Circuit

---

## AUSTIN v. SUMRALL

---

(May 20, 1932. Opinion and Decree.)

---

George W. Lester, of Monroe, attorney for plaintiff, appellee.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, attorneys for defendant, appellant.

PALMER, J. Plaintiff seeks to recover of defendant the sum of $300 for alleged damages to his automobile resulting from a collision between the cars of plaintiff and defendant, which occurred between the hours of 7 and 8 o'clock on the evening of August 11, 1931, on Park avenue, in the city of Monroe.

Plaintiff alleges that his car at the time of the collision was being driven, with his consent and at his request and direction, by one Rudolph Mason; that his car was traveling on said Park avenue in a west-

erly direction at a speed between twenty-five and thirty miles per hour and was on the right-hand side of the street, when an automobile, being driven by defendant, traveling in an easterly direction on said street, without previous signal or warning, suddenly turned to the left in an effort to enter a private driveway situated on the north side of the street, at a time when defendant's car was so close to the car of petitioner as to make a collision inevitable.

Plaintiff further avers that the collision occurred solely on account of the gross negligence and carelessness of the defendant, particularly in his attempting to make a left turn at a point where there was no street intersection, when the cars of plaintiff and defendant were so close together that there was neither time for defendant's car to cross the street ahead of his car nor for his car to stop; that after seeing the danger created by the negligent acts of defendant, the driver of his car applied his brakes and did everything in his power to avoid the collision, but was powerless to do so.

Plaintiff further alleges that the estimated cost of repairing the damages caused his automobile in said collision aggregates the sum of $339.95, but, in order to come within the jurisdiction of the trial court and to secure a speedy trial of the case, he reduced his claim for damages to the amount sued for.

Defendant answered, admitting the collision and that plaintiff's car at the time was traveling on said Park avenue in a westerly direction, and that he was traveling upon the same street in an easterly direction on the date alleged and about the hour alleged, but he denies that he was in any manner at fault in causing the collision.

Defendant further alleges that at the time of the collision, he was on his way to his home on Park avenue, and that when almost opposite his private driveway, located across Park avenue from the side on which he was traveling, he made ready to enter his driveway, but, before doing so, he looked to the east and west for approaching automobiles, sounded his horn, and gave the alarm signal for a left turn.

Defendant further alleges that at the time he was ready to make the left turn across the street to enter his driveway, he saw plaintiff's automobile approaching from the east at a speed of about forty-five or fifty miles per hour, without any lights burning, so he did not attempt to continue to cross the street, but stopped his car about the south center of the street in order to allow the driver of plaintiff's car room and space to pass on the side on which he was traveling, but that the driver of plaintiff's car, on account of not keeping a proper lookout, and due further to the fast rate of speed he was traveling, swerved the car he was driving to the south side of the street, until he was within a short distance of defendant's car, at which time he suddenly attempted to turn it to the right and, in so doing, struck the front side of defendant's car with such force that it knocked defendant's car several feet and damaged it considerably.

Defendant further alleges that the accident was due solely to the carelessness of plaintiff's driver; that plaintiff's driver at the time was operating his automobile in violation of a city ordinance of the city of Monroe, by virtue of the speed at which he was traveling and also in violation of another city ordinance, by not having his lights burning and not driving on the right-hand side of the street, and in not keeping a proper lookout for approaching traffic.

Defendant, assuming the position of plaintiff in reconvention, demands damages of plaintiff in the sum of $96.45, for repairs to his automobile, resulting from this collision, and for loss of the use of his car for five days.

This case was tried in the city court of the city of Monroe, La. The trial judge rendered a judgment in favor of plaintiff for the amount sued for, and rejected the reconventional demand of the defendant. From that judgment, defendant prosecutes this appeal.

## THE FACTS

Park avenue, in the city of Monroe, runs practically east and west. Defendant lives on this street and, after having finished his day's work, got into his car to go home. After entering upon Park avenue, he traveled in an easterly direction. In order to reach his driveway, it was necessary for him to make a left turn and cross the street, since his residence and garage are situated on the opposite side of the street to that on which he was traveling. Plaintiff's car was being driven by a young man, who had been sent on an errand for him. In returning to town, he also was traveling upon Park avenue, but in a westerly direction. As defendant came near the point on the south side of Park avenue to make a left turn to enter his driveway, that is, to a point opposite the driveway leading to his garage, he cut his car to an angle of some forty degrees into the street, but, at that time, discovering plaintiff's car approaching, he brought his car to a standstill. The driver of plaintiff's car, believing that defendant was going to cross the street to enter the driveway on the opposite side, cut his car to his left, and then, upon discovering that defendant brought his car to a standstill, turned plaintiff's car again to his right, and at this time the cars collided, resulting in damages to both of them.

## OPINION

While there are some conflicts in the testimony offered by plaintiff and defendant, yet we deem it unnecessary to consider in detail such conflicts, inasmuch as we think defendant is liable, upon his own statement. When the trial first began, plaintiff called the defendant under cross-examination and the following testimony was elicited from him:

"Q. Your home is located approximately in the center of the Four Hundred Block (400) on Park Avenue, is it not?

"A. Yes, sir,—approximately.

"Q. Before attempting to enter your driveway, did you see the car of plaintiff approaching from the east?

"A. I saw him just about fifty feet.

"Q. What did you do?

"A. I stopped.

"Q. In what position did you stop?

"A. My right rear wheel was six inches from the curb on the south and my left front wheel about twelve feet in the street, just preparatory to making the turn into my driveway."

On direct examination, defendant gave the following testimony:

"Q. What was the position of your car at the time of the accident?

"A. The right rear wheel I would say was 18 inches from the south curb, the left front wheel was at an angle of 40 degrees, approximately 9 feet from the south curb.

"Q. Was your car running or standing still?

"A. Standing still.

"Q. Why was your car standing still?

"A. Just as I attempted to make a left turn to my driveway, I saw approaching car coming, meeting me, and I stopped for them to go by.

"Q. Were you attempting to make a left turn so as to enter your driveway at the time of the accident?

"A. I was in the act of making the turn."

Section 33 of Ordinance 2550 of the City of Monroe, La., provides:

"It shall be unlawful for any person to drive a vehicle into or out of any street, between street intersections, and into or out of an alley, garage, building entrance, or exit, without first stopping and ascertaining that no vehicle is using the street at a point sufficiently near to render an accident probable."

This section of the ordinance was the authority for defendant to make a left turn and cross the street to enter his driveway, which is between street intersections, but it was also his specific directions as to how and when that turn could be made. Clearly, it was his duty, under this ordinance, to bring his car to a standstill before he attempted to make the turn, or any portion of the turn, in order that he might ascertain whether or not there was approaching any vehicle that was at a point sufficiently near to render an accident probable, in the event he should proceed at once to cross the street.

Instead of bringing his car to a standstill upon arriving at the point referred to, defendant cut it diagonally across the street at an angle which he stated to be about forty degrees. In his direct examination, he placed his left front wheel about twelve feet into the street. After thus cutting his car at such an angle into and across the street, he says he saw plaintiff's car approaching at a distance of about fifty feet away, *at which time* he brought his car to a stop. It was, no doubt, his thought that the driver of plaintiff's car would continue on his right-hand side of the street and would have ample space in which to pass, but plaintiff's driver, becoming confused when he saw defendant thus cut his car into the street, as though he was intending to cross, and believing defendant was then in the process of driving across the street, cut his car to his

left in an effort to pass behind him, but, upon finding that defendant had stopped his car, turned to the right, whereupon the two cars collided, resulting in plaintiff's car, when it stopped, being on the opposite, or north, side of the street with the right front wheel upon the curb and the defendant's car being practically straight across the street.

Defendant was clearly at fault, and acted in violation of the provisions of the traffic ordinance, supra, when he did not first bring his car to a standstill before he made any part of his left turn to cross the street to enter his driveway. It is this fault that we think constitutes the proximate cause of the collision. It was perfectly reasonable, under these circumstances, for the driver of plaintiff's car to believe that after defendant had thus partially made the left turn, he was going to continue across, and, reaching such conclusions, he was perfectly justified in attempting to pass to the rear or behind plaintiff's car to escape a collision. Such a result was prevented because defendant, after having partially made the turn, brought his car to a standstill, and then, when this was made manifest to the driver of plaintiff's car, seeing he could not pass to the rear, he again attempted to cut back to his side, at which time the cars collided, causing the damages sued for.

The courts of our state have, in almost every instance, and there are many such cases, held that when when a driver of an automobile violates a traffic ordinance and thereby causes injury to another, he is liable therefor. Broderick v. Lane Cotton Mills, 1 La. App. 155; Eiswirth v. Eaton, 2 La. App. 363; Roberts v. Eason, 6 La. App. 703.

It has frequently been declared to be the duty of the courts to rigidly enforce traffic ordinances, in order that the public

may be safeguarded. This principle is fully considered, and the authorities reviewed, in Haywood v. Wagner, 16 La. App. 521, 134 So. 778. It would serve no useful purpose for the court at this time to give a list of the long line of authorities that sustain these conclusions. The principle is now too firmly fixed in our jurisprudence to admit of any argument.

The right of a driver of an automobile to make a left turn in an effort to escape injury threatened from the negligent acts of another motorist is also well fixed in our jurisprudence. In the case of Potter v. Glassell, 146 La. 687, 83 So. 898, in passing upon this question, the Supreme Court said:

"One compelled to turn to the left and wrong side of a road to avoid a collision, because of another person's violation of the law * * * is not negligent."

It is needless to cite the many other authorities of our Supreme Court, as well as the numerous authorities of this court, that sustain this view. In the case of Lucky v. Lacy et al., recently passed on by this court, 19 La. App. 743, 140 So. 857, 860, April 5, 1932, a case is presented where the defendant was traveling on the wrong side of the road and met plaintiff who was traveling on the right side. Just before they met, in an effort to avert a collision, plaintiff cut his car to the left and, at about the same time, defendant cut his car to the right; the two cars coming together in collision. In passing upon defendant's liability, this court said:

"Due to the fact that the Louisiana courts have so often passed upon the question, it is now settled in our jurisprudence that a driver of an automobile, upon the right side of a highway, in order to avoid a head-on collision with an approaching car, which is traveling upon the wrong side, may cut his car to the left in an attempt to avoid an accident. This is based upon the principle that the driver of the approaching car, using the wrong side of the road, has thereby created a hazardous situation resulting in an emergency threatening injury to the car traveling upon the right side, from which the driver of that car has a right, if his judgment at that time leads him to do so, to resort to the left turn in an effort to avoid an accident."

The same principle is involved here. Defendant, by partially making the left turn before stopping, in violation of the city ordinance, created a hazardous situation resulting in an emergency arising, which threatened injury to plaintiff's car and its driver, from which hazardous situation plaintiff's driver had a right, if his judgment at that time led him to so act, to attempt to pass behind defendant's car, because it was reasonable for him to believe that defendant would continue across the street after having improperly made the start, and the driver of plaintiff's car, after discovering he could not pass to the rear of defendant's car because it stopped, was therefore justified in attempting to escape injury by cutting back towards the left, although by so doing he did not thereby avert the accident. All one has to do, when he faces a hazardous situation creating an emergency threatening injury to him, for which he is not responsible, is to use reasonable judgment in the means he employs to escape injury. It may be that the means employed are not the safest available, but, if he acted as a reasonable person would act under such circumstances, he is not guilty of negligence. We think the plaintiff's driver was well within his rights, as expressed in these principles of law, at the time of the collision.

We repeat, the proximate cause of the collision was the failure of defendant to stop when he came to the point at which he desired to make the left turn. Partially making the turn before he stopped

created in the mind of plaintiff's driver the thought that he was going to cross the street without stopping, and, when he did stop, plaintiff's driver apparently did what any reasonable person would do under the circumstances to avert the accident; so he is not chargeable with fault.

Defendant pleads that plaintiff's driver was violating certain city ordinances at the time of the collision, by speeding, by running without lights, and by not driving on his right side. As we have previously stated, there are conflicts in some of the testimony offered by plaintiff and defendant, and the evidence offered on each of the points just mentioned is involved in these conflicts but even if the evidence sustained these charges—and they certainly were not established to a legal certainty—they would not have any material bearing upon the collision.

As to the charge of running without lights, the testimony shows clearly that no lights were really needed, because the collision occurred before it was dark. As to the charge of running on the wrong side of the street, the evidence clearly shows that plaintiff's driver only turned to the left in an effort to extricate himself from a perilous situation suddenly created by the negligent acts of defendant. As to the charge of speeding, even if true, it had no material bearing upon the collision; it was not even a contributing cause.

The evidence thoroughly established that the amount of damages plaintiff sustained to his car on account of this collision exceeded the amount sued for.

The judgment of the lower court is correct, and it is accordingly affirmed; defendant, appellant, to pay all cost of the appeal.

McGREGOR, J., dissents.